UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANIS IAN individually and d/b/a TAOSONGS TWO, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| BOTTOM LINE RECORD COMPANY, a division of THE BOTTOM LINE THEATER-CABARET, INC., | ) ) ) ) |
| Defendant. | ) ) |

Case No. 3:16-CV-00187

Judge Haynes

Magistrate Judge Holmes

**DEFENDANT, BOTTOM LINE'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Bottom Line Record Company, a division of The Bottom Line Theater-Cabaret, Inc., files this Memorandum of Law in support of its motion to dismiss. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b) because the Court does not have jurisdiction and venue is not proper in Tennessee. Even if the Court determines it has jurisdiction and that venue here is proper, Defendant respectfully submits that the Court should decline to exercise that jurisdiction under the "first to file rule" because Defendant filed first in the proper venue and the proper venue is best suited to fully adjudicate the claims at issue. While Bottom Line maintains that Ms. Ian has failed to state a claim, to the extent that Ms. Ian may have viable claims, this Court can transfer those claims to the Southern District of New York, and the parties can move to consolidate.

## I. BACKGROUND

Bottom Line Record Company is a division of The Bottom Line Theater-Cabaret, Inc., a New York corporation that has no employees or business in Tennessee. (Pepper Declaration, para. 2-3).[1] It is the successor entity of The Bottom Line Record Company, LLC, (*Id.* at para. 3), so, unless noted otherwise, references to "Bottom Line" refer to the same party for the purposes of this case.

As an initial matter, it is important to note that Ms. Ian's[2] Complaint does not make clear that the 1998 contract resulted in an album first released in 1999. (See Complaint, para. 10 (describing 1998 contract), para. 11 (describing 2015 album)). The 2015 album she references is a re-release of the 1999 album.

In 1998, The Bottom Line Record Company, LLC and singer Janis Ian entered into a contract ("Contract") whereby it agreed to release sound recordings that it owned of Ms. Ian singing. (New York Complaint, para. 11).[3] The Contract provided royalties to Ms. Ian and also provided mechanical licenses from Ms. Ian to Bottom Line for songs written by Ms. Ian that appeared on the recordings. (Contract, p. 6). The Contract provided Bottom Line with the exclusive, unlimited, and perpetual rights to manufacture and distribute copies of the recordings. (Contract, p. 5). The Contract contemplated the release of more than one album. (*See, e.g.,*

---

[1] Attached as Exhibit A to Motion to Dismiss.
[2] Plaintiffs Janis Ian and Taosongs Two are referred to collectively as "Plaintiff" or "Ms. Ian."
[3] Complaint of Feb. 4, 2016. *Bottom Line Record Co. v. Ian*, No. 1.16-cv-847 (S.D.N.Y.) (Attached as Ex. 1 to Pepper Declaration). In considering the motion to dismiss, the court "consider[s] the complaint in its entirety, as well as ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Solo v. United Parcel Serv. Co.*, No. 15-1426, 2016 WL 1077163, at *3 (6th Cir. Mar. 18, 2016). The court can take judicial notice of a fact "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Here, the court can take notice of the allegations in the New York Complaint. *Glob. Elec. Sols., Inc. v. Energy Automation Sys., Inc.*, No. CIV.A. 3:08-00619, 2009 WL 463981, at *2 (M.D. Tenn. Feb. 23, 2009) (*citing New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)). *See also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") The 1998 contract is also attached to Ms. Ian's complaint in this matter.

Contract p. 5, "Rights" at para. (c) (referencing releases of records "under any name…from time to time"); p.5 "Trademarks" (stating that album will be released "initially" on The Bottom Line Label.)).

The Contract identified a list of potential song recordings owned by Bottom Line from which the album would be created. These songs were referred to as "the Masters." (Contract, p.1). The Contract also provided that Ms. Ian would have approval of the selection and sequencing of the songs that appeared on the album released under the Contract. (Contract, p. 1). The Contract contemplated that the album would be a compilation of live recordings from 1979; however, the parties later dropped some recordings from consideration, substituted others, and added "bonus tracks" from later recordings. (New York Complaint, para. 11-12).

Ms. Ian worked with the Bottom Line, provided the necessary approvals, and an album was released in 1999. That album, as released with Ms. Ian's approval, contained some songs that were not listed by name in the Contract, including the performance of "Stars," the recording Ms. Ian now claims represents an infringement of her copyright in that musical composition. (New York Complaint, para. 11-12, 14-15).

The 1999 album was re-released in June 2015. (New York Complaint, para. 9). The Contract anticipated and contemplated re-releases. (*See* Contract p. 5, para. (c)). With respect to the recordings, songs, and sequencing, the 2015 re-release was identical to the 1999 album. (New York Complaint, para. 23). Additionally, Ms. Ian worked with Bottom Line to provide information for new "liner notes" and consented to the photographs used for the 2015 re-release. (*See* New York Complaint, para. 21).

Unfortunately, the relationship between the parties deteriorated after the re-release of the album. (*See* New York Complaint, para. 25-31). Among other allegations, Ms. Ian claimed to

3

own the copyright to the sound recording owned by Bottom Line. (New York Complaint, para. 16-18). However, she did not at that time claim that her right in the composition "Stars" had been infringed. (*See generally, id.*). Negotiations began in July 2015, but they were unsuccessful. (New York Complaint, para. 19). On February 3, 2016, after five p.m. Eastern Standard Time, Bottom Line filed suit in the United States District Court for the Southern District of New York seeking a declaratory judgment to clear title to the Bottom Line's copyrights in the sound recordings. (Kurnit Declaration para. 3-4).[4] The matter was docketed on February 4, 2016, at 9:57 a.m. Eastern Standard Time. (Kurnit Declaration, para. 5). The named defendants were Ms. Ian and Rude Girl Records, Inc. Ms. Ian, individually and d/b/a Taosongs Two, then filed this suit alleging infringement as to only one of the underlying compositions contained on Bottom Line's sound recording. This case was docketed in this Court at 4:54 p.m. Central Standard Time on February 4, 2016.[5]

## II. ARGUMENT

### A. The Court lacks jurisdiction to hear this matter.

#### 1. There is no personal jurisdiction over Bottom Line.

Bottom Line, a New York corporation, is not subject to either general or specific personal jurisdiction in Tennessee. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (U.S. 2011)(internal citations and quotations omitted). Specific jurisdiction depends on "an affiliation

---

[4] Attached as Exhibit B to Motion to Dismiss.
[5] Upon information and belief of Mr. Kurnit, the case at bar was filed after and directly in response to the Company's New York filing. (*See* Kurnit Declaration, para. 6-7). The Court Clerk's office for the Middle District of Tennessee informed the office staff for Bottom Line's counsel of the time of the docketing of the Nashville complaint, and Bottom Line requests that this Court take judicial notice of same.

4

between the forum and the underlying controversy" *Id.* This generally means an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* Here, neither general nor specific jurisdiction applies to Bottom Line (nor was it pleaded in the complaint).

With respect to general jurisdiction, there is no set of facts under which Bottom Line can be deemed to have had "continuous and systematic" contacts with Tennessee. *See Maunula v. Westran, Inc.*, 845 F. Supp. 512, 514 (M.D. Tenn. 1994). Bottom Line has no employees, agents, or offices here and does not conduct business in the jurisdiction at all. (Pepper Declaration, para. 4-5). Bottom Line accepted process in New Jersey. (Pepper Declaration, para. 6).

Specific jurisdiction also does not apply. Tennessee's Long-Arm Statute reaches the federal constitutional limits, so, for the purposes of specific personal jurisdiction, the three-part *Mohasco* test applies. *One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 716 (M.D. Tenn. 2015)(citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968)). This test provides that personal jurisdiction is conferred only as follows:

> (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state."
> (2) "[T]he cause of action must arise from the defendant's activities" in the forum state.
> (3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

*Id.*

The contract at issue concerns copyrighted sound recordings made in New York, albums produced in New York, and has a New York choice of law provision. The contract's "jurisdiction" clause on page 6 expressly contemplated that the agreement was to be performed

5

entirely in New York. There are no services to be rendered or materials to be furnished in Tennessee. *See* Tenn. Code Ann. § 20-2-214(a)(5). While Bottom Line does have a website, nothing on the website can be construed as "specifically intended interaction with residents of the state." *See Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 813 (M.D. Tenn. 2009).

In *One Media IP Ltd.*, this Court laid out the application of specific jurisdiction where a foreign record-seller was concerned. The Court noted the Sixth Circuit's determination that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State*.*" *One Media IP Ltd.*, 122 F. Supp. 3d at 716. Here, the Contract involved New York contacts and actions, and the only contact Bottom Line could have had with Tennessee would have been when Bottom Line's unaffiliated and independent record distributor placed music into the stream of commerce. Thus, there is no personal jurisdiction, and the suit should be dismissed.

> **2. The Contract provides Bottom Line a mechanical license for any songs to which Ms. Ian owns or controls the rights, so there is no federal copyright question.**

The Contract provided to Bottom Line a mechanical license to use Ms. Ian's composition. In other words, she expressly authorized the behavior she now claims is infringing upon her copyright. The Contract anticipated the use of songs written by Ms. Ian on records released pursuant to the Contract, whether or not those songs appeared on the list referred to as the "Masters," and the Contract recited that Bottom Line owned the sound recordings. There is no question of infringement under the Copyright Act.

Ms. Ian's claims do not raise a federal question under the U.S. Copyright Act. Her basis basis for relief arises under the Contract and not under federal law. "[I]t is settled beyond

6

peradventure that an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." *Severe Records, LLC v. Rich*, 658 F.3d 571, 581, 2011 WL 4425420 (6th Cir. 2011)(quoting *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 2 (1st Cir. 1987)).

A section titled "Mechanical Royalties" appears on page 6 of the Contract. It defines a "Controlled Composition" as "that portion of a composition directly or indirectly owned or controlled by [Ms. Ian] in whole or in part." The Contract goes on to state that Ms. Ian grants to Bottom Line "an irrevocable license under copyright to reproduce each Controlled Composition on records made hereunder." The license covers all of Ms. Ian's owned or controlled songs on all records produced under the contract—not just songs identified on Exhibit A of the Contract.

Ms. Ian's complaint that her copyright was infringed cannot stand. The Contract governed the release of the songs on the album in 1999 and the re-release in 2015 which contained identical songs. Ms. Ian granted a mechanical license to Bottom Line for the use of her compositions, so she has no claim of copyright infringement. Any claims she may have with respect to the payment of royalties for the use of "Stars" can be addressed as a matter of New York contract law in the already-pending New York litigation. Further, any claims she may have with respect to her publicity rights are similarly covered by the contract (*See* Contract, p. 5 "Publicity Rights") and can be raised in the New York litigation. There is no true federal question with respect to copyright in the composition of the song "Stars," and thus, this matter should be dismissed.

**B.    Venue is Improper in Tennessee.**

Ms. Ian has alleged that venue is proper under 28.U.S.C. § 1391(b)(2). This is incorrect, and the action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

7

Case 3:16-cv-00187   Document 14   Filed 03/31/16   Page 7 of 16 PageID #: 73

28 U.S.C.A. § 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." That is not the case here. Ms. Ian has alleged no facts that suggest any activity relating to the claims has taken place here. The underlying contract involves compact discs not situated in the state.

Neither is venue proper under the copyright law, under which Ms. Ian has brought suit. The permissive statute provides that actions "arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C.A. § 1400(a). Again, Bottom Line is a New York corporation with no employees or offices in Tennessee.

Since venue is not proper, Ms. Ian's claims should be dismissed, particularly since Ms. Ian had no real reason to think that she could obtain personal jurisdiction over Bottom Line. *See Stanifer v. Brannan*, 564 F.3d 455, 459 (6th Cir. 2009) (upholding dismissal rather than transfer). However, Bottom Line does request that, as an alternative to dismissing this case, the Court consider a transfer of venue pursuant to 28 U.S.C. § 1406(a) (noting that if a case is filed in a district in which venue is not proper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"). In the determination of whether to transfer venue under § 1404(b), "[t]he threshold consideration is whether the action is one which could have originally been brought in the proposed transferee district." *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 992 (W.D. Tenn. 2010) (interpreting provision under its former number § 1404(a))(internal quotation omitted). In this case, such venue is the Southern District of New York, where current litigation is already ongoing.

8

In considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (citing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (quoting *Stewart Org.*, 487 U.S. at 30)).

"The private interests of the parties include:(1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively. Also relevant is the locus of operative facts. Public interest factors include: (1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d at 962 (internal quotations and citations omitted). "Rather than being limited in what it may consider, the district court is to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness ... [and] ... weigh in the balance a number of case-specific factors." *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.,* 677 F. Supp. 2d at 992 (internal quotations and citations omitted).

Here, the corporate defendant, its officers, and its evidence are in New York. The recordings at issue were made in New York. The plaintiff, Ms. Ian, performs and teaches in New York. Additionally, while Ms. Ian has filed suit here individually and under her d/b/a

name Taosongs Two, she (individually) and her corporation Rude Girl Records, Inc. are co-defendants in currently-pending New York litigation. Complete relief can be found for Ms. Ian and her various business personas in New York. These factors militate in favor of a conclusion that the proper venue is in New York.

Additionally, the case-specific factors here demonstrate that New York is the proper venue in the interests of justice. "The interest of justice focuses on the efficient administration of the court system, rather than the private consideration of the litigants." *CMG Worldwide, Inc. v. Upper Deck Co., Inc.*, No. 1:08-CV-761-RLY-JMS, 2008 WL 4690983, at *5 (S.D. Ind. Oct. 22, 2008) (internal quotation omitted)). The gravamen of Ms. Ian's complaint is a contract claim. Ms. Ian claims that the albums Bottom Line released did not comport to the 1998 contract in which she licensed the use of her compositions and images. Bottom Line, obviously, disagrees. This is a matter that is governed by New York contract law (see Contract, p. 6). A federal court located in New York, therefore, would be best suited for interpreting the contract claims at issue.

The familiarity with the applicable state law is also a "public interest" factor that must be considered. *See Smith v. Kyphon, Inc.,* 578 F. Supp. 2d 954, 962, 2008 WL 4372954 (M.D. Tenn. 2008)(*citing Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995)) "Where a controversy is governed by state law, a factor to be considered in passing on a motion under § 1404(a) is the desirability of having a case decided by a court sitting in the state whose substantive law governs the action." 1 A.L.R. Fed. 15; s*ee also Vector Co., Inc. v. Urban Sys. Dev. Corp.*, 360 F. Supp. 864, 866 (E.D. Tenn. 1972) (transferring a case where North Carolina law controlled because "a judge sitting in North Carolina is in a better position to try the case than a Tennessee judge."); *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989) (stating a "diversity case should be decided by a court which is most conversant with

the applicable law."). While this Court could undoubtedly apply New York law to resolve this action, a New York court would naturally be better suited to interpret and apply New York law.

Other "public interest" factors such as the local interest in deciding local controversies and the public policies of the form militate in favor of transfer to New York. A New York court would have a significantly stronger desire to resolve an action concerning the rights of Defendant Bottom Line, a New York corporation, which has conducted business in New York for over twenty years.

      **C.**      **This Court Should Apply the First-to-File Rule in Favor of Bottom Line and Dismiss the Case Here.**

The Court should dismiss Ms. Ian's suit under the first-to-file rule because Bottom Line filed its lawsuit in the Southern District of New York before Ms. Ian filed her suit in this Court. Moreover, additional principles support dismissal, because this is not a true race-to-the-courthouse situation. Rather, this is a situation in which Ms. Ian did nothing for almost seventeen years. During this time, she never claimed musical copyright infringement of her song "Stars," even though Bottom Line owns the sound recordings and released them on the 1999 album. Ms. Ian's later-filed suit, therefore, should be dismissed.

The Sixth Circuit has recently addressed what it called a "paucity" of law with respect to the first-to-file rule. *Baatz v. Columbia Gas Transmission, LLC*, No. 15-3208, 2016 WL 731900, at *3 (6th Cir. Feb. 24, 2016). The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts, *id.* at 2, since, generally, it is best to avoid duplicative litigation among federal district courts. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

The first-to-file rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed

11

should generally proceed to judgment." *Baatz*, 2016 WL 731900, at *2 (internal quotations omitted). Courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. *Id.* at *3. If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping," merit the decision to refrain from applying the first-to-file rule. *Id.*

Here, the relevant factors indicate that suit should proceed in New York, not in Tennessee. The album released in 2015 and referenced in Ms. Ian's complaint is identical to the album first released in 1999. Ms. Ian never raised any claims with respect to ownership of the sound recordings or infringement of any of her purported musical copyrights in the 1999 album. When relations between the parties fell apart after the 2015 re-release, Bottom Line promptly took action in New York to clear title to its copyright in its sound recordings. Ms. Ian then instituted this suit in Tennessee alleging infringement with respect to one of the compositions on Bottom Line's sound recordings.

As a principle of sound judicial administration, the first suit should have priority, absent special circumstances. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)); s*ee also Baatz*, 2016 WL 731900, at *3 (court may decline to invoke first-to-file rule if there is evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping." ); *AmSouth Bank v. Dale*, 386 F. 3d 763, 791 n.8 (6th Cir. 2004).

The facts in this case readily satisfy the factors underlying the first-to-file rule and compel the resolution of this matter in New York. Pursuant to Fed. R. Civ. P. 13(a), if Ms. Ian believes that Bottom Line has infringed her copyright to "Stars" by re-issuing the 1999 album

12

using sound recordings copyrighted and owned by Bottom Line, then she must counterclaim in response to Bottom Line's earlier-filed copyright suit concerning the same album, not institute a separate cause of action in a later-filed suit in a different jurisdiction.

Dismissing Ms. Ian's duplicative suit will fulfill the goals and policies of the first-to-file rule. It will preserve scarce judicial resources by avoiding separate costs and avoid judgments in two different courts.

Bottom Line did not act inequitably. All of the significant facts in this case and the witnesses have ties to New York. Ms. Ian had numerous years to raise her copyright concerns, yet did not do so. When she did, Bottom Line tried to resolve any disputes with her. Ms. Ian continued to threaten legal action, but on a different issue. She claimed she owned the copyrights to Bottom Line's sound recordings; she never claimed that her copyright in any composition had been infringed. Bottom Line could not operate with a cloud continuing to hang over its ownership of the Masters and recordings and its re-release of the album. So, it filed suit in New York, the forum with the strongest connections (indeed virtually every connection including the choice of law under the Contract) to the dispute and litigation. Bottom Line has not engaged in any gamesmanship. Since Bottom Line has acted promptly, while Ms. Ian was dilatory, Ms. Ian should not benefit from her inaction by attempting to wrest away Bottom Line's venue choice. Therefore, the first-to-file rule should apply, and the Court should dismiss Ms. Ian's duplicative lawsuit.

### D. Ms. Ian Has Failed to State a Claim upon Which Relief Can Be Granted.

Ms. Ian has failed to state a claim for relief for a variety of reasons discussed below. She did not adhere to the notice requirements of the contract. She did not plead her copyright registration, and her claims are time-barred. Accordingly, this matter should be dismissed.

13

Case 3:16-cv-00187   Document 14   Filed 03/31/16   Page 13 of 16 PageID #: 79

### 1. Ms. Ian has failed to adhere to the notice requirements of the Contract.

The section titled "MISCELLANEOUS" on page 7 of the Contract provides that "[i]n no event shall a party hereto be deemed to be in default or breach" until the party has received written notice and had a thirty-day opportunity to cure. Ms. Ian provided no such notice and opportunity to cure, and, accordingly, she has failed to state a claim upon which relief can be granted.

### 2. Ms. Ian has failed to plead her copyright registration.

Ms. Ian has alleged that the song "Stars" is her copyrighted composition. However, 17 U.S.C. § 411(a) provides that no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with the Act. Ms. Ian has failed to allege the requisite registration information or U.S. Copyright Receipt Case Numbers for the copyright registrations. This defect, while not "jurisdictional", also entitles Defendant to dismissal of the Complaint, as the necessary pleading is a precursor to any relief to be obtained. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) ("§ 411(a) does not restrict a federal court's subject-matter jurisdiction"); *see also id.* at 172 (likening § 411(a)'s requirement to the element of a plaintiff's claim for relief)(Ginsburg, J. concurring). Since Ms. Ian has not pleaded this essential element of a claim, she has failed to state a claim upon which relief can be granted. *See Specific Software Solutions, LLC v. Institute of Workcomp Advisors, LLC*, 615 F. Supp. 2d 708 (M.D. Tenn. 2009) (holding copyright owner must have received registration from Copyright Office before filing suit for infringement).

### 3. Ms. Ian's claims are time-barred.

The contract underpinning the claims at issue is governed by New York law, and the statute of limitations for breach of contract thereunder is six years. N.Y. C.P.L.R. 213. The statute of limitations under the Copyright Act is, at most, three years. 17 U.S.C.A. § 507. Ms. Ian granted a mechanical license to Bottom Line for the use of her compositions in 1998, and Bottom Line first released the album containing her composition "Stars" in 1999, making infringement and other claims time-barred.

## IV. CONCLUSION

Multiple reasons justify dismissal of this action. The Court lacks personal jurisdiction over the Defendant. Venue is not proper in Tennessee. Ms. Ian was not the first to file, and there is pending litigation in another forum. Additionally, Ms. Ian has failed to state a claim upon which relief can be granted because of her failure to allege copyright registration and because of her failure to adhere to the notice requirements of the contract. For all these reasons, Defendant prays that this Complaint be dismissed, or alternatively, either transferred to a more appropriate venue.

Respectfully submitted:

/s/ Harlan Dodson
Harlan Dodson, #02368
Elizabeth Sitgreaves, #027539
Dodson Parker Behm & Capparella PC
1310 6th Avenue North
Nashville, Tennessee 37208
(615) 254-2291
(615) 726-2241 (facsimile)
dodson@dodsonparker.com

/s/ Philip S. Kurnit
Philip S. Kurnit, *Pro Hac Vice*
48 South Park Street
Unit 615
Montclair, NJ 07042-2788
Phone: (973) 746-4333
pkurnit@kurnitfirm.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent through the ECF system to:

Timothy L. Warnock (Tenn. BPR #12844)
Elizabeth O. Gonser (Tenn. BPR #26329)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Phone: (615) 320-3700
twarnock@rwjplc.com
egonser@rwjplc.com

On this 31st day of March, 2016.

/s/ Harlan Dodson
Harlan Dodson